Michael HOGAN, Appellant,

v.

CREDIT MOTORS, INC., et al., Appellees.

No. 04–91–00229–CV.

Court of Appeals of Texas, San Antonio.

Feb. 12, 1992.

Rehearing Denied March 20, 1992.

Thomas D. Bracey, Thomas D. Bracey & Associates, San Antonio, for appellant.

Marcus W. Norris, and Cooper G. Dibrell, Dibrell, Dotson, Dibrell & Dibrell, San Antonio, for appellees.

Before CHAPA, BIERY and GARCIA, JJ.

## OPINION

CHAPA, Justice.

Appellant, Michael A. Hogan, appeals the actions of the trial judge which he alleges resulted in an improper directed verdict being granted against him in favor of appellees Credit Motors, Inc. (d/b/a A.E. Wholesale and CMI Shop) Ernesto Ancira, Jr., Bullish Resources, Inc., Ancira Motor, Co., and Ancira Enterprises, Inc.

Michael A. Hogan sued Credit Motors, Inc. ("CMI") to enforce a lease agreement. Hogan sought unpaid rentals, prejudgment interest, attorney's fees, postjudgment interest, and costs. Plaintiff's First Amended Petition included as defendants unnamed shareholders and directors; the suit was further amended to specifically add all the defendants who are the appellees herein.

Hogan also amended his petition to include allegations of civil conspiracy, fraudulent transfer of assets, violations of the Uniform Bulk Transfers Act, fraud, and real estate fraud. Additionally, Hogan sought declaratory relief to pierce corporate veils and utilize alter ego theories to hold all defendants jointly and severally liable. CMI filed a countersuit alleging violations of the Texas Deceptive Trade Practices Act.

In response to interrogatories, appellant listed Ernesto Ancira, Jr., a party defendant, and Ken Carr, the designated corporate representative of defendant CMI, as persons with knowledge of facts surrounding the cause of action. However, appellant failed to list their addresses or telephone numbers. Further, appellant also responded in general terms to a general inquiry about his and Ginger Miller's knowledge of facts surrounding the cause of action.

As a result, shortly before the trial on December 14, 1990, without any prior order to compel, the trial court granted discovery sanctions, strictly prohibiting appellant from presenting any witnesses "on any matter", live or by deposition, except for the appellant and Ginger Miller. The order further sanctioned appellant by limiting his testimony and that of Ginger Miller's because appellant answered an interrogatory generally, even though the interrogatory inquired generally as to his and Miss Miller's knowledge of the facts surrounding the cause of action.

In furtherance of this order, a subpoena issued by the appellant for Ernesto Ancira, Jr. was quashed by the court immediately prior to trial wherein the court made it clear that the order of December 14, 1990 stood and would be enforced, thus effectively preventing appellant from subpoenaing Ernesto Ancira, Jr., Ken Carr, or anyone other than Miss Miller. Further, as required by the same order, the court prohibited the appellant from presenting any deposition testimony of either Ernesto Ancira, Jr. or Ken Carr, although their depositions had previously been taken.

At the hearing, appellant pointed out to the court that if the court quashed the subpoenas, appellant would be unable to preserve his error by Bill of Exceptions that contained the testimony of either Ernesto Ancira, Jr. or Ken Carr. However, the court nevertheless quashed the subpoena, thereby effectively preventing the preservation of appellant's complaint.

The record reflects that, as required by the order, the only witnesses the trial court permitted to testify before the jury, to a limited extent, were the appellant and Miss Miller, after which the trial court granted an instructed verdict. The record further reflects that although a Bill of Exceptions was timely requested by the appellant during the trial, it was finally permitted by the court several days after the end of the trial. Since the court's prior orders and instructions prevented the issuance of any subpoenas for either Ernesto Ancira Jr. or Ken Carr, the record of the Bill of Exceptions only contains the testimony of the appellant and Miss Miller as per the court's order of December 14, 1990.

Therefore, the dispositive issue is whether the trial court committed reversible error in granting its order of December 14, 1990.

■ Texas Rule of Civil Procedure 181 states that "[e]ither party to a suit may examine the opposing party as a witness, and shall have the same process to compel his attendance as in the case of any other witness." Also, "the designated company representative [of a party] at trial" should be treated by the court "as it would any other party" and should be permitted to testify in trial as any party even if not designated as a witness of relevant facts in answers to interrogatories. *E–Z Mart Stores, Inc. v. Terry*, 794 S.W.2d 63, 65–66 (Tex.App.—Texarkana 1990, writ denied). The trial court has discretion to permit a completely unidentified witness, who is not a party, to testify if the party offering the witness shows good cause for not listing the witness. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex.1989).

■ Further, prior to October 16, 1991, the general abuse of discretion standard was the appropriate standard of review to be applied in appeals involving discovery abuse sanctions. However, in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991), the Texas Supreme Court established limitations on the trial court's exercise of sound discretion in imposing "death penalty" sanctions for discovery abuse. In *TransAmerican*, the supreme court granted mandamus relief to a party whose pleadings were struck, whose cause of action was dismissed, and against whom a default judgment was granted based on a counterclaim, reserving only the issue of damages. *Id.* The sanctions had been imposed by the trial court upon the relator as a result of discovery abuse. The supreme court held that mandamus lies:

> when a trial court imposes discovery sanctions which have the effect of precluding a decision on the merits of a party's claims—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment.

*TransAmerican*, 811 S.W.2d at 920.

The court further established standards which "set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion ..." in granting a just sanction order. *Id.* at 917 (footnote omitted). The court held that in order for a sanction to be just, 1) it "must be directed against the abuse and toward remedying the prejudice caused the innocent party", which means that "the sanction should be visited upon the offender" requiring "[t]he trial court ... [to] at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both"; 2) and, it "must not be excessive" which means that "[t]he punishment should fit the crime" requiring that "courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance". *Id.* Pertaining to "death penalty" sanctions, the court stated:

> [w]hen a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery. '[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an

action without affording a party the opportunity for a hearing on the merits of his cause.'

*Id.* at 918 (citations omitted).

The court also made the following recommendation in order to aid the appellate courts in their efforts to determine the propriety of the sanctions imposed:

> The district court made no findings to support the sanctions imposed. Rule 215 does not require a trial court to make findings before imposing discovery sanctions, and we do not add such a requirement here. We note only that we do not have the benefit of any explanation by the district court for the severity of its ruling. It would obviously be helpful for appellate review of sanctions, especially when severe, to have the benefit of the trial court's findings concerning the conduct which it considered to merit sanctions, and we commend this practice to our trial courts....

*Id.* at 919 n. 9 (citations omitted).

In *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991), the supreme court granted mandamus relief to a party and its attorney who had been sanctioned by the trial court for discovery abuse. The trial court had ordered the relator to pay the amount of $10,000 to the party seeking discovery, and the relator's attorney was ordered to perform ten hours of community service. The deadlines for the sanctions imposed both on the relator and the attorney preceded the conclusion of the litigation.

Including the exclusion of essential evidence and defenses under the standard established in *TransAmerican*, the supreme court stated:

> Sanctions which terminate or inhibit the presentation of the merits of a party's claims for decision are authorized by Rule 215. These include *exclusion of essential evidence*, striking pleadings, dismissal and default. Rule 215, paragraph 2b(3), (4), (5). The effect of such sanctions is to adjudicate claims or *defenses*, not on their merits, but on the manner in which a party or his attorney has conducted discovery. We recognize that severe sanctions are sometimes nec-

essary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. However, *such sanctions must be reserved for circumstances in which a party has so abused the rules of procedure, despite imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court. TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex. 1991).

*Braden,* 811 S.W.2d at 929 (emphasis added).

Finally, the supreme court concluded that the trial court must modify its order to at least allow both the relator and his attorney "an opportunity to appeal before such sanctions" were executed. *Braden,* 811 S.W.2d at 930.

Thus, on October 16, 1991, the Texas Supreme Court established requirements upon the trial court in the exercise of its discretion when imposing "discovery sanctions which have the effect of precluding a decision on the merits of the party's claims." *TransAmerican,* 811 S.W.2d at 920. The sanctions imposed by the trial court in the case before us clearly precluded "a decision on the merits of the party's claims" and, in effect, resulted in the directed verdict against the appellant.

Clearly, this record reflects that the trial court erroneously prevented the appellant from presenting the testimony of Ernesto Ancira, Jr., a party defendant, and Ken Carr, a designated representative of a party defendant. *E-Z Mart Stores, Inc.,* 794 S.W.2d at 64-5; TEX.R.CIV.P. 181. The record does not indicate that the trial court considered the question of good cause prior to granting the sanctions. *Gee,* 765 S.W.2d at 395.

Instead, the record reflects that the trial judge, understandably unaware at the time of the trial of the requirements of *TransAmerican,* which was not yet published, failed to follow the standards imposed by the Supreme Court although aware he was imposing "death penalty" sanctions. The

following remarks of the trial court attest to that fact:

> THE COURT: ... I mean, there's no question that you answered this question, but the question was propounded as to who was going to testify and what they were going to testify to and since no one was listed who was going to testify to damages, I don't see how, under the law as it is nowadays, I can let you do it....
>
> ....
>
> THE COURT: I won't argue that. That's what make [sic] whole decision so tough. The rules are made and I don't make them, and I may not even enjoy enforcing them. In effect, what's occurred here, in my opinion, has deprived a man of his day in court. But I have to enforce the rules.
>
> ....
>
> THE COURT: ... I'm going to grant the motion for instructed verdict, and when it goes to the Fourth Court I'm hopeful they'll reverse me, because there's just certain times when, in effect, a man's deprived of his rights because of rules....

Consequently, we hold that the court erred in granting the pretrial order of December 14, 1990. However, TEX.R.APP.P. 81(b)(1) provides that no judgment will be reversed for error:

> unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court.

■ Under the circumstances involved here, TEX.R.APP.P. 52 requires an appellant to preserve his error by way of a Bill of Exceptions. If an appellant fails to follow these requirements, the error will be waived. *See Gonzalez v. Texas Dept. of Human Resources*, 581 S.W.2d 522, 532 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). Because it would be manifestly unjust to punish an appellant for not properly preserving his error as required by appellate rule 52, and to also deprive him of his appellate relief when he was effectively denied the opportunity to preserve his error below, we hold that it was reversible error for the court to effectively prevent the preservation of error by way of a Bill of Exceptions. *Smith v. State*, 490 S.W.2d 902, 908 (Tex.Civ. App.—Corpus Christi 1972, writ ref'd n.r.e.). We further hold that the error here "was such as probably prevented the appellant from making a proper presentation of the case to the appellate court." TEX. R.APP.P. 81(b)(1).

Accordingly, the court order of December 14, 1990 should be set aside; since the erroneous order affected the entire trial on the merits, we will not address the remaining points of error.

■ However, we note that although the rules provide sanctions for failure to comply with proper discovery requests, we can find no authority to sanction a party for answering an interrogatory *generally* which inquires *generally*, since sanctions would not be proper where a party has complied with the request. Further, TEX. R.CIV.P. 168 states that sanctions under TEX.R.CIV.P. 215 are appropriate when a party has failed to answer *particular interrogatories* only after obtaining an order to compel; however, such sanctions are appropriate without a prior order to compel only when "a party wholly fails to answer *any of the interrogatories*." *Lewis v. Illinois Emp. Ins. Co.*, 590 S.W.2d 119, 120 (Tex.1979) (emphasis added). It would thus seem axiomatic that if an order to compel is required prior to sanctions where *some* interrogatories are unanswered, such an order would likewise be required where all interrogatories are answered, but it is alleged that an answer is insufficient or incomplete.

Here, the record reflects that appellant answered all the interrogatories; that the appellant answered *generally* those interrogatories which inquired *generally;* and, that no order to compel was requested or

obtained from the trial court. *Lewis*, 590 S.W.2d at 120.

The court order of December 14, 1990 is set aside, the judgment is reversed and the cause is remanded for a new trial.