NO. 07-03-0052-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 12, 2005

_____

JAMES JONGEBLOED, APPELLANT

V.

HORKEY OIL COMPANY, INC., APPELLEE

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-512,745-A; HONORABLE MACKEY HANCOCK, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

James Jongebloed challenges the trial court's judgment that Horkey Oil Company,

Inc. have and recover $515,887.31, plus interest and costs, based upon a written guaranty

agreement.  By four issues, he questions whether (1) an entity that is no longer the holder

of the note, because it has indorsed, transferred possession, and irrevocably assigned

ownership of the note to another entity, can obtain a judgment against a guarantor of the note for the amount due on the note, (2) the trial court abused its discretion by refusing to amend the scheduling order, (3) the trial court abused its discretion by allowing an improperly designated witness to testify about matters the court would not allow Jongebloed to discover, and (4) the trial court abused its discretion by refusing to allow Jongebloed's expert witness to testify. We affirm.

Horkey sold some of its convenience stores in the Midland/Odessa area to Petro Express, Ltd., a Texas limited partnership, upon Petro's execution and delivery of a promissory note for $336,000 and another note for $400,000. In connection with the acquisition by the limited partnership, William Bobbora, Richard Stinson, and Jongebloed executed a written guaranty agreement dated February 8, 1999, by which each guaranteed payment of the $400,000 note. In December 1999, Horkey transferred the $400,000 note to Plains National Bank, with recourse and warranties to secure payment of a note of its president, Joe R. Horkey, to the bank and also executed a commercial security agreement covering the $400,000 as collateral for payment of its president's note to the bank. When Petro defaulted on the $400,000 note, on February 14, 2001, Horkey sued Petro and Bobbora, Stinson, and Jongebloed on their guaranties. After Horkey's claims against Jongebloed were severed into the underlying cause, it filed its first amended petition asserting claims against Jongebloed based on the written guaranty.[1] In response, by

[1]At the time of the severance, Jongebloed's pleadings included a general denial and affirmative defenses of breach of contract and fraud.

supplemental answers, Jongebloed asserted (1) Horkey was not entitled to recover in the capacity in which it sued, (2) a defect in parties and that Horkey was not a proper party, (3) the contract was without consideration or had failed and Horkey was not the owner and holder of the guaranty agreement, and (4) he did not sign the guaranty agreement.

Jongebloed's counsel announced that Jongebloed acknowledged he signed the guaranty agreement. A jury trial was waived and the case was tried to the bench on October 14, 1992. Upon conclusion of the trial, the trial court signed a judgment that Horkey recover damages against Jongebloed based upon the guaranty agreement.

By his first issue, Jongebloed contends that because Horkey had indorsed, transferred possession, and irrevocably assigned ownership of the note to the bank, it could not obtain a judgment against the guarantor of the note for the amount due thereunder. We disagree.

Because the trial court's findings of fact are not challenged, we will conduct our review in the context of the findings and applicable law. *See* McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Northwest Park Homeowners Ass'n, Inc. v. Brundrett, 970 S.W.2d 700, 704 (Tex.App.–Amarillo 1998, pet. denied). The copy of the note admitted into evidence contained Horkey's transfer of the note "with recourse and warranties on Horkey Oil Company, Inc." Among other things, the commercial security agreement

1.      described the promissory note;

3

2. granted the bank a security interest in the note;

3. provided that Horkey "is and shall remain the sole owner of the collateral;" and

4. provided that the written security agreement represented the complete and integrated understanding between the "Owner and Lender" regarding the terms therein.

In addition to other findings, the trial court found:

2. [o]n or about December 15, 1999, Horkey Oil Company, Inc. granted a security interest in the Petro Express, Ltd. note to PNB Financial Bank. Horkey Oil Company, Inc. did not give PNB Financial Bank a security interest in Defendant James Jongebloed's individual guaranty agreement.

3. [t]he note was not conveyed to PNB Financial Bank and at all times germane to this litigation Horkey Oil Company, Inc. was the party entitled to pursue collection of the note and the individual guaranties.

Notwithstanding these findings, Jongebloed argues that Horkey could not proceed to enforce payment of the guaranty.

A guaranty agreement is not a negotiable instrument and is not governed by the provisions of section 3.102 of the Texas Business and Commerce Code. Vaughn v. DAP Financial Services, Inc., 982 S.W.2d 1, 6 (Tex.App.--Houston [1st Dist.] 1997, no pet.) Further, by paragraph 4(b) of the guaranty, Jongebloed expressly agreed it would not be necessary nor required that Horkey (holder)[2]

---

[2]The guaranty expressly designated Horkey Oil Company, Inc. as the "holder."

4

file suit or proceed to obtain or assert a claim for personal judgment against any other party (whether maker, guarantor, endorser, or surety) liable for the Obligations . . . .

According to its terms, the guaranty was not a conditional guarantee or a guaranty of collection, but instead, expressly provided that Jongebleod unconditionally guaranteed the prompt payment of the note at maturity. Texas case law recognizes that a transfer of a guaranty can be implied upon an assignment of a promissory note or other obligation; however, this is not true in every case. *See* Escalante v. Luckie, 77 S.W.3d 410, 419 (Tex.App.--Eastland 2002, pet. denied). Although the original of the promissory note had been delivered to the bank together with the security agreement, the original of the guaranty agreement remained in the file of Horkey's attorney.[3] In effect, Jongebloed waived any requirement that Horkey exhaust its rights or take action against Petro as a condition precedent to its action on the guaranty. Because the provision in the security agreement that Horkey would remain the sole owner of the note (collateral) is sufficient evidence to support findings of fact two and three, we are bound by them.

Moreover, Horkey's transfer of the note "with recourse" operated to obligate Horkey to pay the bank in the event that Petro did not pay. *See* Tex Bus. & Com. Code Ann. § 3.415(a) (Vernon 2002). Horkey's obligation to pay the note upon Petro's default in payment of the note was absolute, not contingent. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30, 33 (1958). Petro's default in the timely payment of the note matured

---

[3]Not trial counsel.

5

Horkey's absolute and non-contingent obligation to pay the note and provided Horkey the additional ground to prosecute the action to enforce Jongebloed's unconditional guaranty of prompt payment of the note. Accordingly, issue one is overruled.

By his second issue, Jongebloed contends the trial court erred in denying his motion to amend the scheduling order. We disagree. After suit was filed on February 14, 2001, the trial court rendered a scheduling order on May 23, 2001, which set a discovery deadline of April 29, 2002. The record does not show any effort by Jongebloed to examine or discover the original promissory note except that after discovery had closed, he and counsel for Horkey examined the original note at Plains National Bank. Then, on July 23, 2002, the trial court granted a continuance of the merits trial until October 14, 2002. After a hearing, Jongebloed's emergency motion for a hearing on the scheduling order was denied on September 9, 2002.[4]

Rule 166 of the Texas Rules of Civil Procedure authorizes the trial court to make orders to control proceedings and gives authority to modify an order to prevent manifest injustice. Because the trial court has the duty "to schedule the cases in such a manner as to expeditiously dispose of them" and is given wide discretion in managing the docket, an appellate court will not interfere with the exercise of that discretion absent a showing of clear abuse. Clanton v. Clark, 639 S.W.2d 929, 931 (Tex. 1982); Trevino v. Trevino, 64 S.W.3d 166, 170 (Tex.App.--San Antonio 2001, no pet.). Although Jongebloed learned

---

[4]Jongebloed did not file his motion until September 6, 2002.

6

about the transfer of possession of the note to the bank on June 20, 2002, he did not present his request to amend the discovery order for approximately ten weeks. We conclude Jongebloed did not diligently pursue his efforts for discovery and thus, the trial court did not abuse its discretion in denying the motion to amend the scheduling order. Hall v. Rutherford, 911 S.W.2d 422, 427 (Tex.App.--San Antonio 1995, writ denied).

Moreover, a reporter's record of the hearing on September 9, 2002, was not provided. Thus, we must presume the trial court did not abuse its discretion because the claimed error has not been preserved by bill of exception. Tex. R. App. P. 33.1. *See also* Hogan v. Credit Motors, Inc. , 827 S.W.2d 392, 393 (Tex.App.--San Antonio 1992), *writ denied*, 841 S.W.2d 360 (1992) (per curiam). Issue two is overruled.

Given our analysis and disposition of issues one and two and the fact that the guaranty supporting the judgment is case specific, a discussion of the remaining points is pretermitted. Tex. R. App. P. 47.1. *See also* Marantha Temple v. Enterprise Products, 833 S.W.2d 736, 742 (Tex.App.--Houston [1st Dist.] 1992, writ denied).[5]

Accordingly, the judgment of the trial court is affirmed.

Per Curiam

---

[5]Moreover, even if the issues presented error, a question we do not decide, the harmless error rule "applies to all errors in that it draws no distinction as to the type of errors involved in its requirement for reversal." *See* Lorusso v. Members Mut. Ins. Co., 603 S.W.2d 818, 820 (Tex. 1980).

Johnson, C.J., not participating.