COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| | § | |
| TRUJILLO ENTERPRISES, LTD, | | |
| | § | No. 08-17-00208-CV |
| Appellant, | | |
| | § | Appeal from |
| v. | | |
| | § | County Court at Law No. 3 |
| SUSAN JEAN DAVIES AND | | |
| RENEE MAZZA, INDEPENDENT | § | of El Paso County, Texas |
| JOINT EXECUTRIXES OF THE | | |
| ESTATES OF WALTER PARKER AND | § | (TC # 2013DCV4039) |
| EVA PARKER, DECEASED. | | |
| | § | |
| Appellees. | | |
| | § | |

## **O P I N I O N**

In this appeal, we are asked to decide if a party, who is a legal entity (i.e. partnership or corporation), must list its entity representative as a witness in discovery responses, or otherwise risk exclusion from testifying. The issue arises because Trujillo Enterprises, LTD. ("Trujillo") did not answer discovery requests and did not list any person as having knowledge of relevant facts. Nonetheless, it sought to have its representative testify at trial. The case was tried to the bench. The judge allowed the representative to testify, but ultimately declined to consider that testimony. The propriety of the trial court's exclusion turns on the construction of Rule 193.6, that generally precludes offering "the testimony of a witness (*other than a named party*)" who has not been

timely disclosed. [Emphasis added]. TEX.R.CIV.P. 193.6. But we need not reach that issue because even if the trial court erred, the exclusion of the testimony was not harmful error. Accordingly, we affirm.

## BACKGROUND

This is a declaratory judgment case over the existence of a necessity easement. In November 2008, Walter and Eva Parker (the Parkers) purchased a piece of commercial property along Frutas Avenue in El Paso, Texas. Their property abutted a tract of land purchased by Trujillo Enterprises, LTD (Trujillo) a few months earlier. Both the Parker and Trujillo parcels came through grants by a common owner. When the parcels were originally unified, they were apparently developed as a brewery.[1]

The Parker tract includes a party hall and residence. Trujillo's tract contains the original brewhouse and a hodgepodge of additional buildings. These additional buildings were all

---

[1] TexasBreweries.com offers this historical perspective for what at one time was called the "Harry Mitchell Brewery":

In August 1933, Harry Mitchell, an English born former bartender, returned from Juarez, Mexico, where he had spent Prohibition running the Mint Cafe. He organized the new brewery with three other businessmen who decided to name the brewery after Mitchell since he was the most recognizable man in the area. With the help of brewmaster and consultant, Oskar Scholz, the new brewery was built over the ruins of the Old El Paso Brewery. Oskar Scholz came from Prague, Vienna. Scholz claimed that he would brew a full bodied and slightly drier product for the Harry Mitchell Brewing Company. On August 5, 1934, Mitchell's 35 employees began operations. On November 21, the first batch of [H]arry Mitchell's Special Lager was released and greeted well. [I]n 1935, Robert L. Neidhard became the brewmaster and changed the brewing process. Sales skyrocketed. By 1936, Grand Prize beer from Gulf Brewing Company in Houston began to take market share away from Mitchell's Special Lager. By 1941, Mitchell had lowered prices on his beers to $2.10 a case to compete. Eventually, things turned around, and in 1949, a canning plant was erected, and sales took off. After Mitchel retired, the name of the company was changed from Harry Mitchell Brewing to Mitchell Brewing. In 1954, the new owners, having won national awards for their operation, decided to enter the San Antonio market. As Mitchell brands gained market share in Texas, New Mexico and Arizona, the San Antonio breweries retaliated by entering the [E]l Paso market, and their local market share began to fall. By 1955, Mitchell Beer sales in San Antonio began to decline.

In 1956, the Falstaff company of St. Louis purchased the brewery for $1.5 million. They immediately discontinued all Mitchell brands and began brewing their own beers. The brewery lasted until 1967. The old brewery still stands today.

http://www.texasbreweries.com/elpaso.htm#ixzz5QzIrkJJP (last visited September 14, 2018).

constructed immediately adjacent to each other, such that from an aerial view, they can only be distinguished by the different rooftops:



PLAINTIFF'S EXHIBIT

5

The Trujillo tract includes the series of buildings in the upper right-hand portion of the photo exhibit. Trujillo has leased out portions of the old brewery buildings to a variety of tenants--some as apartments, and others to a gym, a forklift company, a furniture maker, and a clothing manufacturer. Some of the space is used for storage. Additionally, Trujillo's tract includes the large structure labeled as El Paso Produce/Victor's Produce on the photo exhibit, which Trujillo operates. The Parker tract comprises the buildings on the lower right hand of the

photo exhibit, labeled as the Frutas Avenue Fraternal and Social Club. Not shown in the exhibit, a railroad right of way runs along the entire length of the right side of both properties.

This dispute arose from one of the buildings in the old brewery complex that Trujillo leases to a furniture maker. That leasehold is situated in the building in the lower right portion of the old brewery complex. It has an attached dock that is accessed by driving on what the photo exhibit labels as "N. Latta Street" and then over a parking area. The portion of N. Latta Street that splits the Parker and Trujillo parcels was at some point in the past closed as a city street. Another trial exhibit shows this manner of access:



The Parkers' deed, however, granted them ownership of the driveway and parking area up to the loading dock. Since 2008, the Parkers allowed the furniture maker to use the drive. Apparently the Parkers were also leasing some space to that same tenant. In 2013, however, the Parkers withdrew that permission, and began blocking off the driveway with a gate. The gate had

existed on the property for some time, and both the Parkers and Trujillo were given keys by the previous owner of the unified estate.

Both the Parkers and Trujillo filed suit seeking declarations regarding their right to use the driveway. The suits were consolidated and tried to the court. The Parkers' suit alleged that no express deed gave Trujillo the right to use the drive, and there was no basis for any implied easement. Trujillo's pleading is not in our record, but at trial Trujillo only claimed an implied necessity easement. The Parker's case consisted mainly of the deeds showing ownership of the driveway, and brief testimony about the history of the property.[2] To refute any claim of necessity, one of the Parkers' daughters testified that the furniture maker had told her that he could get his furniture out another way, and that she had personally seen a passage from that building leading to the front of another building in the complex which would have access to a city street.

After Parker rested, Trujillo called Victoriano Trujillo to testify. He is the owner of Trujillo Enterprises, Ltd. Parker objected, contending that Trujillo had never responded to discovery, including Rule 194.1 requests for disclosure. The trial court allowed Victoriano to testify, but reserved the decision on whether to consider the evidence. Victoriano testified that the portion of the old brewery Trujillo owned consisted of eight to ten buildings. The several buildings were built next to each other, and mostly separated by internal walls. Trujillo has leased the different buildings to different tenants with diverse businesses, or kept them as storage. Some of the buildings can be accessed from Frutas Avenue, or through the parking area adjacent to Alameda Avenue, or from Stevens Street. The loading dock used by a furniture maker, however, can only be accessed by the driveway over the old closed portion of N. Latta Street. Though he had never investigated the cost, Victoriano concluded it would be impossible to modify the buildings on his

---

[2] By the time of trial, both Mr. and Mrs. Parker had passed away, and their executrices had substituted in as parties.

5

parcel to allow access to the loading dock. He could cut through the walls to include an internal hallway but did not believe he could make it large enough to accommodate forklifts or trucks. Aside from the cost which he had not calculated, Victoriano testified that the leases to other tenants would preclude any modification of the building.

In a letter ruling, the trial judge concluded that she could not consider Victoriano's testimony because he was not designated as a witness, nor did Trujillo show any good cause, or lack of unfair surprise or prejudice. The trial judge concluded the remaining evidence did not establish an easement across the Parkers' land. The trial court entered a final judgment declaring the absence of any implied easement and awarded the Parkers their attorney's fees. No findings of fact were requested or made by the trial court.

## DISCUSSION

Trujillo brings two issues, both of which contend the trial court erred in excluding Victoriano's testimony. To obtain reversal of a judgment based upon error in the exclusion of evidence, an appellant must show: (1) the trial court did in fact commit error, and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 44.1; *Gee v. Liberty Mutual Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1989).

Ordinarily, the admission or exclusion of evidence rests within the sound discretion of the trial court. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex. 1995). Trujillo's first issue, however, is focused solely on the construction of Rule 193.6, which in relevant part provides:

> (a) **Exclusion of Evidence and Exceptions**. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

6

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX.R.CIV.P. 193.6. Trujillo claims that a plain language application of the rule allows a named party--whether they be individual or corporate--to testify even if they did not identify themselves as a witness. Because Victoriano was Trujillo's representative at trial, it contends he should have been allowed to testify on behalf of Trujillo, a named party to the suit. Interpretation of a procedural rule is a question of law, which we review de novo by applying the same canons of construction applicable to statutes. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155 (Tex. 2015); *Cross v. Wagner*, 497 S.W.3d 611, 613 (Tex.App.--El Paso 2016, no pet.).

We note that Rule 193.6 was adopted as a part of the major rule revisions in 1999.[3] Prior to that time, the exclusion of witnesses was controlled by the then existing version of Rule 215, and courts often grappled with the question of allowing or disallowing a party witness who had not been properly identified in response to a discovery request.[4] The Texas Supreme Court was explicitly asked to carve out an exception for party witnesses in *Smith v. S.W. Feed Yards*, 835 S.W.2d 89, 90 (Tex. 1992). The court declined to do so, but instead resolved the issue based on an application of the good cause exception, something Trujillo does not urge here. Of note, both the majority and a concurrence in *Smith* raised the issue of whether a corporate or entity party

---

[3] The 1999 revisions to the Texas Rules of Civil Procedure were a thoroughly studied and debated rules revision, seven years in the making. *See* Statement of Hon. Nathan L. Hecht, 61 TEX.BAR J. 751 (Aug. 1998). The text of Rule 193.6 was included in the Supreme Court Advisory Committee's proposal. Alex Wilson Albright, New Discovery Rules: The Supreme Court Advisory Committee's Proposal, 15 The Review of Litigation, 275, 314 (1996)(setting forth "other than a named party" language as part of proposed Rule 6).

[4] *See e.g. Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex. 1992); *E-Z Mart Stores, Inc. v. Terry*, 794 S.W.2d 63 (Tex.App.--Texarkana 1990, writ denied); *NCL Studs, Inc. v. Jandl*, 792 S.W.2d 182 (Tex.App.--Houston [1st Dist.] 1990, writ denied); *Millman v. Howell*, No. 05-91-00015-CV, 1991 WL 119253 (Tex.App.--Dallas, July 2, 1991, writ denied)(not designated for publication); *Van Horn v. A. Plastino, Ltd.*, No. B14-90-00728-CV, 1991 WL 127367 (Tex.App.--Houston [14th Dist.], July 11, 1991, writ denied)(not designated for publication); *Hogan v. Credit Motors, Inc.*, 827 S.W.2d 392 (Tex.App.--San Antonio 1992, writ denied).

should be treated the same as an individual party who did not designate themselves as witnesses. *Id.* at 90 ("Excluding every party from the identification authorized by Rule 166b(2)(d) would open a broad loophole encompassing every employee of an entity and every plaintiff in a large class action."); *id.* at 94 (Hecht, J. concurring)("The argument that an exception should be made for parties' identification of themselves and one another because everyone expects a party to testify in his own case does not address the problems with institutional or corporate parties, class actions, and multi-party lawsuits."). Nonetheless, the court made no express provision in Rule 193.6 to address that issue, and neither Trujillo, nor the Parkers, cite to any case that has expressly decided if the "other than named a party" language Rule 193.6 includes entity parties.[5]

Trujillo's second issue contends that Victoriano could testify as a rebuttal witness to the testimony the Parkers offered in their case-in-chief.

Tempted as we are to delve into these questions, we decline to do so because ultimately the excluded evidence would not change the outcome of this case. In other words, its exclusion, even if error, was not harmful error. *See* TEX.R.APP.P. 44.1(a)(1)("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment."). A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Sanchez v. Balderrama*, 546 S.W.3d 230, 234-35 (Tex.App.--El Paso 2017, no pet.). A successful challenge to evidentiary rulings usually requires the complaining party to

---

[5] The issue was raised in *Daredia v. Natl. Distributors*, 05-04-00307-CV, 2005 WL 977828, at *3 (Tex.App.--Dallas Apr. 28, 2005, pet. denied)(mem. op., not designated for publication), but the court did not expressly construe the rule. In that case, an entity party had designated one person as having relevant knowledge but attempted to call a different person at trial.

8

show that the judgment turns on the particular evidence excluded or admitted. *Alvarado*, 897 S.W.2d at 753-54; *Balderrama*, 546 S.W.3d at 235. We review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted. *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). Whether erroneous admission of evidence is harmful is more a matter of judgment than precise measurement. *Id*. at 144; *Balderrama*, 546 S.W.3d at 235.

Here, the harmful error analysis is colored by the nature of this case. Trujillo sought to prove the existence of a necessity easement. This Court has concluded that the entitlement to an necessity easement is a question of law that we review *de novo*. *Jentsch v. Lake Road Welding Co.*, 450 S.W.3d 597, 600 (Tex.App.--El Paso 2014, no pet.); *see also Benedictine Sisters of the Good Shepherd v. Ellison,* 956 S.W.2d 629, 631 (Tex.App.--San Antonio 1997, pet. denied). The Texas Supreme Court has agreed, subject to the limitation that some "underlying factual issues may need to be resolved in order to reach the legal question." *Staley Family Partnership Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016). For the reasons noted below, we conclude Victoriano's testimony does not substantively impact any of those potential factual issues.

### Necessity Easements

An easement is a liberty, privilege, or advantage without profit granted to one person to use another's parcel of land for some limited purposes. *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex.App.--San Antonio 1996, writ denied). While many easements are express and spelled out in a deed or written instrument, Texas has long recognized implied easements. They fall into two broad categories: necessity easements and prior use easements. *Hamrick v. Ward*, 446 S.W.3d 377, 381 (Tex. 2014), *citing Koonce v. J.E. Brite Estate,* 663 S.W.2d 451, 452 (Tex. 1984) (necessity easement) and *Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex. 1966)(prior use easement).

9

Texas recognized necessity easements as far back as *Alley v. Carleton,* 29 Tex. 74, 78 (1867). They govern the situation when a grantor, in conveying or retaining a parcel of land, fails to expressly provide for a means of accessing the land. *Id.* A party claiming a necessity easement must show: (1) a unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access is a necessity and not a mere convenience; and (3) the necessity existed at the time the two estates were severed. *Hamrick*, 446 S.W.3d at 382. The necessity element is just that, for if the owner of the land has other means of access, they cannot impose a burden on the land of another. *Duff v. Matthews*, 158 Tex. 333, 311 S.W.2d 637, 640 (1958); *Alley,* 29 Tex. at 78 ("A way of necessity, however, must be more than one of convenience, for if the owner of the land can use another way, he cannot claim by implication to pass over that of another to get to his own."). Merely showing that it would be expensive to obtain another outlet is not generally sufficient to establish a necessity easement. *Williams v. Kuykendall,* 151 S.W. 629, 630 (Tex.Civ.App.--Austin 1912, no writ). A necessity easement is also temporary and "ceases when the necessity terminates." *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). The party seeking the necessity easement carries the burden to establish all elements of that claim. *Staley Family Partnership, Ltd. v. Stiles*, 435 S.W.3d 851, 855-56 (Tex.App.--Dallas 2014), *aff'd,* 483 S.W.3d 545 (Tex. 2016).

Because of the difficulty in proving strict necessity, courts a created an alternate doctrine when a landowner can show a historical use and some reasonable necessity. In *Howell v. Estes,* for instance, a single stairwell served two buildings. 71 Tex. 690, 12 S.W. 62, 62 (1888). When the building's owner conveyed each of the two buildings to different owners, the one with title to the stairwell denied its use the other. *Id.* Under strict necessity, the owner without the stairwell could not prevail, because its land, and at least the first floor of its building, was still accessible.

10

To ameliorate this problem, the court concluded that "if an improvement constructed over, under, or upon one parcel of land for the convenient use and enjoyment of another contiguous parcel by the owner of both be open and usable and permanent in its character . . . the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment of the estate conveyed. *Id.* at 63. The court labels this a "prior use easement." *Hamrick*, 446 S.W.3d at 382-83. It is based on "a presumption that parties contracting for property do so 'with a view to the condition of the property as it actually was at the time of the transaction,' and therefore, absent evidence to the contrary, such conditions which openly and visibly existed at the time are presumed to be included in the sale. *Hamrick*, 446 S.W.3d at 382-83, *quoting Miles v. Bodenheim*, 193 S.W. 693, 696-97 (Tex.Civ.App.--Texarkana 1917, writ ref'd).

As between the two implied easements--necessity easements and prior use easements--the Texas Supreme Court has recently made clear that a necessity easement is the only option for one landowner seeking a *roadway* across another landowner's property. *Hamrick*, 446 S.W.3d at 384 ("We clarify that courts adjudicating implied easements for roadway access for previously unified, landlocked parcels must assess such cases under the necessity easement doctrine."). Prior use easements were largely created for less intrusive burdens, such as utility lines, or as with the use of the stairway in *Howell*. *Id*. at 379. Because a roadway constitutes a substantial encumbrance on property, the courts require "strict, continuing necessity to maintain necessity easements." *Hamrick*, 446 S.W.3d at 379. Accordingly, because Trujillo sought to impose a roadway easement across the Parkers' land, it must meet the strict necessity test.

Under this standard, we conclude the Victoriano's testimony, even if considered, would not make a difference. First, it cannot be said that Trujillo is landlocked without access to public streets. Its parcel borders North Stevens Street and Frutas Avenue, and also has access through a

11

parking lot abutting Alameda Avenue. The most that Trujillo can say is that one building on its property does not have direct access to these streets, but only because other buildings on Trujillo's property block the way. How those buildings were constructed and how they are managed is or was solely within Trujillo, or its predecessor's control. *See Alley*, 29 Tex. at 78 ("One of the essential components of such easements is, that there must be two tenements. It is a right upon a servient in favor of a dominant estate. Consequently, no such right can arise from the use made by the owner of his own tenement."). Moreover, Victoriano's testimony in context argues that only one particular use of the one building is impaired--use of the loading dock. He agreed that he could fashion a hallway from the furniture maker's building through his other buildings, but that he did not think it practical to make that passage large enough to move goods. He did not contest, and another trial exhibit shows another loading dock in another of the buildings, presumably leased to a different tenant. And even were Trujillo's unique situation addressable by a necessity easement, his testimony fails to establish a basis for it.

Generally, if a landowner can gain access to a public road through his or her own property, they are expected to do so. In *Duff v. Matthews*, for instance, a development along Lake Austin divided a single large parcel into smaller lots, some accessed by what was called the "upper road" that ran atop a bluff, and other lots accessed by a lower road near the lake. 311 S.W.2d at 639-40. One group of property owners sought a necessity easement to gain access to the lower road because over time, the "upper road had grown up in trees and underbrush and possibly washed out to the extent that it was no longer passable." *Id*. at 642. The court concluded, however, that those facts did not create a necessity easement across another's property. *Id*. at 643. In so holding, the court quoted a California court as follows:

> The right of way from necessity must be in fact what the term naturally imports and cannot exist except in cases of strict necessity. It will not exist where a man can

12

get to his property through his own land. That the way over his own land is too steep or too narrow, or that other and like difficulties exist, does not alter the case; and it is only where there is no way through his own land that a grantee can claim a right over that of his grantor. It must also appear that the grantee has no other way.

*Id*. at 643, *quoting Kripp v. Curtis*, 71 Cal. 62, 65, 11 P. 879, 880 (1886).

Some prior cases allow for a necessity easement when part of a landowner's parcel is blocked from access to a public road, but other parts are not. In *Daniel v. Fox*, a landowner held a parcel that was divided by a stream. 917 S.W.2d at 109. The land on one side of the stream had access to a public road, but the other side did not unless it was allowed a necessity easement across adjoining land. *Id*. The landowner presented testimony about the actual cost to build a bridge over the stream (thus providing access to the entire tract) was prohibitively expensive. *Id*. at 112. It would in fact cost more than the value of the land. *Id*. The court upheld the imposition of a necessity easement to provide access to the portion of the parcel orphaned by the stream. *Id.* at 113 (relying on several out-of-state cases based on disproportionate cost to gain access over one's own land); *but see*, *id*. at 113 (Duncan, J., dissenting)("Under Texas law, a party may not have a way of necessity when he has another legal means of access to his property.").[6]

Conversely, when such a showing is not made, the landowner cannot prove the necessity. *Harrington v. Dawson-Conway Ranch, Ltd*, 372 S.W.3d 711, 725 (Tex.App.--Eastland 2012, pet. denied). In *Harrington*, the owner of a large ranch both failed to prove necessity at the time of severance, and at present, for imposing an implied necessity easement over an adjoining ranch. *Id*.

---

[6] Courts also distinguished between implied easements that are by "grant" and those that are by "reservation." *Hamrick*, 446 S.W.3d at 383. If the owner of the unified estate conveys the landlocked parcel, the easement is by grant. *Id*. If the owner of the unified estate retains the landlocked parcel, the easement arises by reservation. *Id*. The *Daniels* court recognized this distinction and analyzed the case under a lesser burden for an easement by grant. 917 S.W.2d at 110 ("In cases involving easements by 'implied grant,' it is sufficient if the easement in question was reasonably necessary to the convenient and comfortable enjoyment of the property as it existed when the severance was made."). Later, the supreme court in *Hamrick* discussed the distinction between easement by grant or reservation, but only in the context of implied use easements, and not necessity easements. 446 S.W.3d at 383-84. Because we deal with a road, the standard for a necessity easement controls. Consequently, the decision in *Daniels* turned on a standard that is more lenient than that applicable here.

13

By the time of trial, one corner of the ranch in question was accessed by a county road, but a fork of the Brazos river cut off large portions of the ranch from that access point. *Id*. at 715. Another corner of the ranch also had an access point, but over "rough" terrain. *Id*. The court rejected the argument that these access points were inaccessible because the record lacked any evidence showing the cost of constructing either a low water concrete crossing or constructing roads over the rough terrain. *Id.* at 725. As such, the necessity claim failed because there were other access points out of the property. The court quoted an earlier Austin Court of Appeals decision making the same point:

> The Adamses assert that they are unable to travel by car to the southern boundary of their property from the [express] Easement Road access on the northern portion due to the condition of the land. However, they concede that they can travel by foot and could build a road, but at great expense. 'When one has access to a part of his tract of land by way of travel over his own property, this, as a matter of law, is a better and more direct route than one which burdens an adjacent landowner . . . It does not matter that the route across one's own land is longer, more circuitous, or in an inferior condition physically.' *Sentell v. Williamson County,* 801 S.W.2d 220, 223 (Tex.App.--Austin 1990, no writ). Only when there is *no* way through his own land can a grantee claim a right over that of a grantor. *Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 640 (1958).

*Harrington*, 372 S.W.3d at 725, *quoting Adams v. Norsworthy Ranch, Ltd*., 975 S.W.2d 424, 429 (Tex.App.--Austin 1998, no pet.).

Victoriano's testimony falls into the latter category. He never investigated, nor provided any cost estimates for providing access through his own property to the furniture maker's leasehold. He merely stated his conclusory opinion that it was impossible. The claimed impossibility arose more from the leaseholds Trujillo had granted to other tenants, than any insurmountable physical barrier. Because that testimony fails to meet the standard for strict necessity required to impose a burden on the Parkers' land, we conclude that even with the addition of his testimony the result in this case would likely be no different. Or as stated in the language of Rule 44, the exclusion of Victoriano's testimony did not probably result in an improper

14

judgment.  TEX.R.APP.P. 44.1(a)(1).  Accordingly, we overrule Trujillo's two issues and affirm the judgment below.

January 23, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.