**Opinion filed January 9, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00231-CV
_____

## FLAVIOUS J. SMITH, JR. AND MELANIE A. SMITH, Appellants

## V.

## THE RANCH OWNERS ASSOCIATION, Appellee

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C48560**

## M E M O R A N D U M   O P I N I O N

This is a land use case. Appellants, Flavious and Melanie Smith, sued Appellee, The Ranch Owners Association, seeking a declaration of their rights under (1) an alleged easement across the Association's land, and (2) an alleged irrevocable license to use a private roadway that is also owned by the Association. In addition, the Smiths asserted claims for trespass, tortious interference, nuisance, and breach

of contract.  The parties filed cross-motions for summary judgment.  After a hearing, the trial court granted the Association's motion and denied the Smiths' motion.

The Smiths raise three issues on appeal, contending that the trial court erred when it (1) found that the alleged easement was not an easement, whether by necessity, prescription, or estoppel, (2) found that no irrevocable license exists as to the Smiths' access to the private roadway, and (3) granted summary judgment in favor of the Association because genuine issues of material fact exist as to each of the Smiths' claims.  We affirm in part, and we reverse and remand in part.

## I. *Factual Background*

The Association is a homeowners' association that governs a single-family residential subdivision known as "the Ranch" in Palo Pinto County.  The Smiths purchased their home, which is adjacent to the Ranch, from a neighboring residential subdivision, Hill Country Harbor (HCH), in 2009.  The Smiths' property is not located within the boundaries of either the Ranch or HCH, and it is not affiliated with or governed by a homeowners' association.

There are two alleged easements on the Smiths' property.  The parties refer to them as Easement A and Easement B, and we will mirror this characterization. Easement B, which is the subject of the parties' easement dispute, is located on land owned by the Association, and it partially borders Easement A as well as the Smiths' property.  Easement A is also located on land owned by the Association.

Easement B consists of a U-shaped gravel road that connects to the public roadway adjacent to the Smiths' property, passes in front of the Smiths' residence, and connects to the rear of their property, as highlighted in the diagram below:



NOTES
1. Subject property in Zone X, areas determined to be outside 500-year floodplain.
2. This plat is not meant for construction purposes.

The general warranty deed by which HCH conveyed the property to the Smiths expressly subjects the conveyance to the restrictive covenants declared by HCH. The deed recites that the Smiths own the property "Together With, all and singular, the rights, benefits, privileges, easements . . . located thereon." The deed also expressly excludes from the conveyance any "[e]asements or claims of easements which are not recorded in the public records of Palo Pinto County, Texas." After purchasing the property, the Smiths obtained a survey of the area and later

filed an "Affidavit of Use and Access Easement" in the Palo Pinto County records, which claimed a prescriptive easement on Easement B.

In 2002, prior to the Smiths' purchase of the property, the Association granted an express, non-exclusive easement (Easement A) to the property that provides access to the public roadway; this easement is recorded in the Palo Pinto County records. In connection with their purchase of the property, the Smiths were granted a partial assignment of Easement A. Easement A is shown in the diagram above as the "30' Access Easement."

In 2007, HCH granted to all "owners" an "irrevocable license" to "use and enjoy the equestrian center, gazebo, riding arena, and spa/fitness center." "Scenic Drive" is a roadway through the Ranch's property to HCH's property, which the Smiths have used to access HCH's amenities and property. Later, after purchasing the equestrian center, the Association constructed a passcode-secured gate across Scenic Drive, which restricted access to the above route. In doing so, the Association did not permit the Smiths to use the secured gate to access the HCH amenities and property. In 2019, the Smiths filed an affidavit of use and access easement to use Scenic Drive to access HCH and its amenities. Despite this, it is undisputed that the HCH amenities and property are accessible by an alternate route via public roadways.

During the course of the litigation, the parties stipulated to certain facts. Among other things, the parties stipulated that the Smiths currently use Easement B to access the rear portion of their property, and the Association currently uses it for access to the Association's common area for recreational purposes that extend beyond the Smiths' property, such as four-wheeling and horseback riding. In 2015 and 2018, the parties attempted, unsuccessfully, to negotiate the grant of a nonexclusive access easement over Easement B for the Smiths' benefit.

4

In the underlying suit, the Smiths alleged that the Association encouraged its members to drive loud recreational vehicles along Easement B at all hours of the night to harass the Smiths. They also alleged that, as another harassing tactic, the Association routinely parked vehicles and equipment from the equestrian center, which is adjacent to the Smiths' property, along the Smiths' property line. In addition to their easement claims involving Easement B and the irrevocable-license claim for access to Scenic Drive, the Smiths asserted causes of action for trespass, tortious interference with easement rights, and nuisance in connection with the Association's alleged activities.

The Association filed a series of motions for summary judgment, each responding to the claims that had been asserted by the Smiths. The Smiths also filed a motion for summary judgment contending that they were entitled to an irrevocable license to access Scenic Drive as a matter of law. Before the trial court ruled on these motions, both parties filed more comprehensive motions for summary judgment. The Association moved for traditional summary judgment on all claims alleged by the Smiths. The Smiths moved for summary judgment for declarations of their rights regarding the access easement and the irrevocable-license claims. After the parties filed responses and replies, the trial court granted the Association's traditional motion for summary judgment in its entirety[1] and denied the Smiths' motions. This appeal followed.

## II. *Standard of Review – Summary Judgment*

We review a trial court's order granting summary judgment de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When we review a

---

[1]In their appellate brief, the Smiths state that the trial court granted the Association's motion for summary judgment on no-evidence grounds. However, the trial court's order specifically granted the Association's "Motion for Summary Judgment on All of Plaintiff's Claims," which asserted only traditional grounds for summary judgment.

traditional summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail*, 593 S.W.3d at 181; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Exploration, LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311–12 (Tex. 2014) (per curiam).

To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KMS Retail*, 593 S.W.3d at 181; *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). The evidence raises a genuine issue of material fact if "reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

When the parties file competing motions for summary judgment and the trial court grants one motion and denies the other, as in this case, we review all of the summary judgment evidence, determine the issues presented, and render the judgment that the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017); *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Further, when the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which the judgment is sought are meritorious. *Merriman*, 407 S.W.3d at 248; *Knott*, 128 S.W.3d at 216 (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)).

III. *Analysis*

A. *The Alleged Access Easement*

In their first issue, the Smiths contend that Easement B exists as a matter of law, whether by necessity, prescription, or estoppel. As a result, they contend, the trial court erred when it granted the Association's motion for summary judgment and therefore found that the Smiths do not have an access easement over Easement B, and denied the Smiths' motion for summary judgment declaring that they do.

An easement is a liberty, privilege, or advantage without profit granted to a person, either personally or by virtue of his ownership of a specified parcel of land, to use another parcel of land for a specific purpose. *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex. App.—San Antonio 1996, writ denied). "[E]asements in which the benefits are for a specified parcel of land regardless of the identity of the owner are 'easements appurtenant.'" *Id.* (citing *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962)). The parcel owned by the grantor of the easement is the servient estate and the parcel benefitted by the easement is the dominant estate. *Id.* (citing *Miller v. Babb*, 263 S.W. 253, 254 (Tex. Comm'n App. 1924, judgm't adopted)). Easements may be created by (1) an express grant, (2) necessity, (3) estoppel, (4) prescription, and (5) prior use. *Harrington v. Dawson-Conway Ranch, Ltd.*, 372 S.W.3d 711, 722 (Tex. App.—Eastland 2012, pet. denied) (citing *Machala v. Weems*, 56 S.W.3d 748, 754–55 (Tex. App.—Texarkana 2001, no pet.)); *see Hamrick v. Ward*, 446 S.W.3d 377, 381–85 (Tex. 2014).

1. *Easement by Necessity*

The Smiths assert that the summary judgment evidence shows that their property is surrounded entirely by the Association's land and that there is no other point in which to access their "entire" property other than through Easement B. Moreover, they claim that without access to the rear of their property, which they assert can only be attained by using Easement B, they cannot exercise their express

legal right to build additional homes on the property, nor can they access various improvements located at the rear of their property such as their propane tank, water and electric lines, an electric transformer, their water pump house, their storage barn, and over two additional acres of land. In response, the Association argues that (1) the Smiths' property is not landlocked because they have another easement by which to access the property (Easement A), and (2) the Smiths' desire to use Easement B is not by necessity, but rather only for mere convenience. We agree with the Association.

To assert a necessity easement, the party claiming the easement must successfully demonstrate: (1) a unity of ownership of the alleged dominant and servient estates prior to severance; (2) that the claimed access is a necessity and not a mere convenience; and (3) that the necessity existed at the time the two estates were severed. *Hamrick*, 446 S.W.3d at 382 (citing *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984)). The standard of proof to establish an implied easement by necessity is "strict necessity." *Harrington*, 372 S.W.3d at 722–24; *see Hamrick*, 446 S.W.3d at 383. Under the strict necessity standard, "[n]ecessity means that the use of the easement must be economically or physically necessary for the use of the land and not merely desirable." *Payne v. Edmonson*, 712 S.W.2d 793, 796 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (citing *Drye*, 364 S.W.2d at 208).

The Association contends that the Smiths have not raised a genuine issue of material fact regarding element one above—unity of ownership. It asserts that an easement by necessity requires unity of ownership between the claimant and *his grantor*; therefore, because HCH did not own the property on which Easement B lies when it conveyed the property to the Smiths, no unity of ownership can be established here. But unity of ownership of the dominant and servient estates must exist prior to their *severance*. *See, e.g., Staley Fam. P'ship v. Stiles*, 483 S.W.3d

8

545, 549 (Tex. 2016) (discussing unity of ownership for a severance that occurred in 1866); *Koonce*, 663 S.W.2d at 452 ("The elements needed to establish an implied easement by necessity are: (1) unity of ownership prior to separation."). Easements by necessity are temporary and terminate upon the cessation of the necessity that created them. *Harrington*, 372 S.W.3d at 723–24 (holding that a claimant proved unity of ownership for a severance that occurred in 1901). This includes when the dominant estate is conveyed to others, but the necessity persists. *See Crone v. Brumley*, 219 S.W.3d 65, 70 (Tex. App.—San Antonio 2006, pet. denied) (holding that the necessity easement was impliedly transferred to the successors-in-interest upon their acquisition of the property); *Rushin v. Humphrey*, 778 S.W.2d 95, 97 (Tex. App.—Houston [1st Dist.] 1989, writ denied) ("As successors in interest to the admitted common source of title, the appellees are entitled to assert whatever easement rights were acquired.").

Even so, the only summary judgment evidence submitted by the Smiths concerning unity of ownership consists of the statements in their verified first amended petition, which they incorporated into and referenced in their motion for summary judgment. The Smiths also included and attached to their motion another verification by Flavious in which he again stated that he had personal knowledge of the facts alleged in their pleadings and that the factual statements in their motion concerning the alleged unity of ownership were true and correct. It is well-settled that pleadings, even if verified, cannot be used as summary judgment evidence. *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (citing *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971)). Thus, we conclude that the Smiths did not present any competent summary judgment evidence that a unity of ownership existed at the time of severance. Nevertheless, even if they had, they also failed to raise a genuine issue of material fact concerning

9

a continuing necessity because Easement A provides legal and unfettered access to their property from the public road.

The Smiths do not dispute that Easement A runs within a few feet of the front door of their home and provides access to the public road. Instead, they argue that using Easement A to access the rear of their property would require that they demolish their residence. According to Flavious's sworn declaration that is attached to their response to the Association's third motion for summary judgment, their house and land that are adjacent to Easement A are "a great deal higher than the grade level on Easement A, currently requiring steps up to the property." Even under the strict necessity standard, the Smiths reason, this evidence raises a genuine issue of material fact because Texas law does not require that a property owner destroy their property in order to access it.

The Smiths ground their concerns based on the Texas Supreme Court's statement in *Hamrick* that when a grantor, in conveying or retaining a parcel of land, fails to expressly provide for a means to access it, "courts will imply a roadway easement to facilitate *continued productive use* of the landlocked parcel, rather than rigidly restrict access." *Hamrick*, 446 S.W.3d at 382 (emphasis added) (citing *Alley v. Carleton*, 29 Tex. 74, 78 (1867)). The Smiths argue that the term "productive use" means that "[a]ccess to a property goes beyond simply getting to a property, but it must instead allow for meaningful and necessary services to arrive at a home."

The Smiths direct us to three cases in support of their arguments: *Couch*, *Pisarski*, and *Lester*. *Couch* and *Pisarski* are distinguishable because each involved only one manner of access, whereas the case before us involves an express easement (Easement A) as well as an additional, claimed implied easement by necessity (an access easement over Easement B). *See Couch v. Avila Aguilar*, 631 S.W.3d 898, 901–02 (Tex. App.—Fort Worth 2021, no pet.); *Pisarski, Inc. v. Hong Bui*, No. 07-

10

17-00118-CV, 2018 WL 4057285, at *1–2 (Tex. App.—Amarillo Aug. 24, 2018, no pet.) (mem. op.); *see also Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 429 n.3 (Tex. App.—Austin 1998, no pet.) (distinguishing *Teich v. Haby*, 408 S.W.2d 562 (Tex. App.—San Antonio 1966, writ ref'd n.r.e.) and *Daniel*, 917 S.W.2d at 106 on the same grounds). Further, *Pisarski* concerned the scope and extent of a necessity easement, not whether an easement by necessity existed in the first place. *Pisarski*, 2018 WL 4057285, at *2. *Lester* is also inapposite because it involved an easement for an electric utility line, rather than a roadway. *Lester v. Conway*, No. 04-15-00730-CV, 2016 WL 7234053, at *1 (Tex. App.—San Antonio Dec. 14, 2016, no pet.) (mem. op.).

Here, it is undisputed that Easement A is an express easement that provides the Smiths with access to the public roadway from their property. The Smiths nevertheless claim that Easement A does not sufficiently serve their property to permit its continued, productive use. Unfortunately for the Smiths, as a matter of law, an easement by necessity cannot arise when an express easement already exists and provides access to the property. *Duff v. Matthews*, 311 S.W.2d 637, 640 (Tex. 1958); *see Stiles*, 483 S.W.3d at 549; *see also Machala*, 56 S.W.3d at 755 ("A way of necessity must be more than a convenience; if the owner of the land can use another way, he cannot claim by implication a right to pass over that of another to get to his own." (citing *Bains v. Parker*, 182 S.W.2d 397, 399 (Tex. 1944))).

Moreover, neither the cost nor the impediments associated with the access changes the analysis. For example, in the seminal case *Duff v. Matthews*, the supreme court held that although the access road to the claimants' properties was overgrown and possibly washed out to the extent it was impassable, those facts did not create an easement by necessity under the "strict necessity" standard that is applicable to such easements. *Duff*, 311 S.W.2d at 642–43. We and several of our sister courts have consistently followed this approach when confronted with similar

circumstances. *See, e.g.*, *Trujillo Enters., Ltd. v. Davies*, 573 S.W.3d 297, 307–08 (Tex. App.—El Paso 2019, no pet.); *Clearpoint Crossing Prop. Owners Ass'n & Cullen's LLC v. Chambers*, 569 S.W.3d 195, 202–03 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Harrington*, 372 S.W.3d at 725; *Adams*, 975 S.W.2d at 429; *Payne*, 712 S.W.2d at 796.

Notably, *Pisarski*, which concerned the scope and extent of a necessity easement, relied on *Daniel v. Fox*, which allowed for a necessity easement when part of the landowner's parcel was blocked from access to a public road, but other parts were not. *Pisarski*, 2018 WL 4057285, at *2 (citing *Daniel*, 917 S.W.2d at 110). The landowner in *Daniel* presented evidence that the actual cost to construct a bridge over a stream (thus providing access to the entire tract) was prohibitively expensive; it would essentially cost more than the value of the land. *See Daniel*, 917 S.W.2d at 112. Therefore, the court upheld the imposition of a necessity easement to provide access to the portion of the parcel that was orphaned by the stream. *Id.* at 113 (relying on several out-of-state cases based on disproportionate cost to gain access over one's own land); *but see id.* at 113 (Duncan, J., dissenting) ("Under Texas law, a party may not have a way of necessity when he has another legal means of access to his property."); *see also Harrington*, 372 S.W.3d at 724–25 (explicitly rejecting *Daniel*'s lowered standard of proof for necessity easements).

As the Eighth Court of Appeals noted in *Trujillo*, the court in *Daniel* recognized the distinction between implied easements "by grant" and those "by reservation," and thus analyzed the case under a lesser standard of proof for an easement by grant. *Trujillo*, 573 S.W.3d at 307 n.6. Later, the supreme court in *Hamrick* discussed the distinction between an easement by grant or by reservation, but only in the context of implied use easements, and not necessity easements. *Id.* (citing *Hamrick*, 446 S.W.3d at 383–84); *see Harrington*, 372 S.W.3d at 722–24 (explaining the differing elements and standards of proof applicable to "(1) implied

easements by necessity, whether by reservation or by grant; (2) implied easements by reservation; and (3) implied easements by grant"). Because a roadway is involved here, the standard for a necessity easement—that of strict necessity—controls. *Hamrick*, 446 S.W.3d at 382, 384; *see Trujillo*, 573 S.W.3d at 307 n.6 ("Consequently, the decision in *Daniel* turned on a standard that is more lenient than that applicable here."); *Harrington*, 372 S.W.3d at 724–25.

In their motion for summary judgment, the Smiths concede the presence of Easement A and that it provides access to the public road. As summary judgment evidence to support their assertion that Easement A does not satisfy the strict necessity standard, the Smiths offered Flavious's sworn declaration, in which he states:

> The Property benefits from a deeded easement, which Defendant calls "Easement A" . . . . But because of the location of our historic home, that deeded easement only allows access to the front of the house. The only way to access the rest of the property—including our propane tank used for heating, our water pump house, water and electric lines, including our transformer, and our storage barn wherein we store boats, various trailers, and vehicles and the 2+ acres behind our house—is the easement marked on the survey above. Without the use of the U-shaped easement [Easement B], we would have to tear down our historic home to access the rest of our property. Further, the house and land adjacent to "Easement A" are a great deal higher than the grade level on "Easement A" currently requiring steps up to the property.

However, even by their own summary judgment evidence, the Smiths admit that their property is not landlocked and is not without access to a public road. The most that can be discerned from their statements is that a portion of their property does not have direct access to the public road, but only because other buildings on their property block other available means of access. *See Trujillo*, 573 S.W.3d at 307.

Moreover, Flavious's statement that the Smiths would need to destroy their home to access the rear of their property is conclusory. A statement is conclusory if

it expresses a factual inference or legal conclusion without providing underlying facts to support that conclusion. *Leonard v. Knight*, 551 S.W.3d 905, 911 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008)); *see Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Conclusory testimony or affidavits are not competent summary judgment evidence and are insufficient to create a question of fact to defeat the grant of summary judgment. *See Brownlee*, 665 S.W.2d at 112; *see also* TEX. R. CIV. P. 166a(c) (summary judgment evidence must be credible and susceptible to being readily controverted).

The stipulated facts show that the Smiths' house does not strictly abut the property boundaries in the southeastern corner of their land, but rather that there is at least some space between the property line and their house. Further, the Smiths do not offer any competent summary judgment evidence concerning other means of connecting the rear of their property to its front, such as by modifying the structure of their home or building a bridge or other means of passage over, under, or around their home. Though these options may be burdensome, expensive, or even impractical, courts have consistently required those who claim an easement by necessity to show that such an easement is a "strict necessity," even when alternative means are expensive, difficult, or impractical. *See Duff*, 311 S.W.2d at 642–43; *Trujillo*, 573 S.W.3d at 306–07; *Harrington*, 372 S.W.3d at 725; *Reyes v. Saenz*, 269 S.W.3d 675, 677–78 (Tex. App.—San Antonio 2008, no pet.); *Adams*, 975 S.W.2d at 429.

We conclude that the Smiths have failed to raise a genuine issue of material fact regarding the continuing necessity element that is required to establish a necessity easement. Because an express easement already exists and provides access

14

from their property to the public road, no easement by necessity may arise as a matter of law. *See Duff*, 311 S.W.2d at 642–43; *Trujillo*, 573 S.W.3d at 306–07.

### 2. *Easement by Prescription*

The Smiths also assert that they acquired an easement by prescription; the Association avers that the Smiths have not established that their use of Easement B met any of the requirements for a prescriptive easement to arise. After carefully examining the record on this point, we conclude that the Smiths have failed to raise a genuine issue of material fact as to whether the prescriptive use period reached at least ten years.

Prescriptive easements are not well-regarded in the law. *Harrington*, 372 S.W.3d at 716; *McClung v. Ayers*, 352 S.W.3d 723, 728 (Tex. App.—Texarkana 2011, no pet.). A prescriptive easement is analogous to adverse possession, in that the hostile and adverse character of the "use" that is necessary to prevail is the same for both claims. *Harrington*, 372 S.W.3d at 718 (citing *Othen v. Rosier*, 226 S.W.2d 622, 626 (Tex. 1950)). A person may acquire a prescriptive easement if he uses another's land in a manner that is adverse, open and notorious, without interruption, and exclusive for at least ten years. *Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.026 (West 2002). The burden is on the party claiming the easement rights to establish all necessary facts. *Brooks*, 578 S.W.2d at 673.

Here, even assuming arguendo that the Smiths' use of Easement B commenced on the day they acquired the property and their use fulfilled the other elements that are necessary to establish a prescriptive easement, they have failed to raise a genuine issue of material fact regarding the ten-year period requirement for using the land. The record shows that the Smiths acquired the property on June 25, 2009, filed their original petition in 2018, and asserted a claim for a prescriptive easement for the first time on March 15, 2019, when they filed their first

supplemental petition.[2] Simple math forecloses their prescriptive easement claim—the period from June 25, 2009, to March 15, 2019, is less than ten years.

Because the entire period the Smiths have owned the property coupled with when they first asserted their claim of a prescriptive easement equates to less than ten years, the Smiths would need to "tack on" their predecessors-in-interest use of Easement B to establish the requisite ten-year period of prescriptive use. *See Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 766 (Tex. App.—El Paso 2010, no pet.) ("[T]he ten-year requirement may be established by tacking successive interests if there is 'privity of estate between each holder and his successor.'" (quoting CIV. PRAC. & REM. § 16.023)). But the Smiths have presented no summary judgment evidence that the use of Easement B by their predecessors-in-interest was adverse and exclusive. Thus, they failed to raise a genuine issue of material fact on that element.

The Smiths only evidence regarding the use of Easement B by the prior owners of the land consists of the Walker and Newman affidavits, both of which are silent as to whether the use of Easement B by any prior owners of land was adverse or exclusive. Each affidavit merely states, globally, that Easement B has been used continuously by prior owners. As such, even if the Smiths could successfully raise a genuine issue of material fact concerning the other prescriptive easement elements, and we do not hold that they have done so, they have at a minimum failed to raise a

---

[2]In their response to the Association's third motion for summary judgment, the Smiths assert that "the present claim" to enforce their prescriptive easement rights was filed on July 19, 2019, in their first amended petition—more than ten years after their purchase of the property on June 25, 2009. But the Smiths first raised a claim for declaratory relief concerning their alleged prescriptive easement in their first supplemental petition, to which they attached the affidavit of use that they filed in the county records. Their second supplemental petition, filed on March 21, 2019, further buttressed the same claim. *See Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 766 (Tex. App.—El Paso 2010, no pet.) (rejecting the contention that the ten-year period was not met because suit was filed three days before the ten-year period was achieved on the grounds that the easement claimant could tack successive interests, rather than on the grounds that the filing of suit would not have defeated claimant's claim to satisfying the ten-year period).

genuine issue of material fact as to whether the prescriptive period satisfies the necessary ten-year period requirement.

### 3. *Easement by Estoppel*

The doctrine of easement by estoppel is an exception to the statute of frauds, *Cleaver v. Cundiff*, 203 S.W.3d 373, 375 (Tex. App.—Eastland 2006, pet. denied), and, "[b]eing a creature of equity, it seeks to prevent injustice and to protect innocent parties from fraud." *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979). Under this doctrine, a landowner may be estopped from denying the existence of an easement created by "representations" upon which another has detrimentally relied. *See Cleaver*, 203 S.W.3d at 375 (quoting *Drye*, 364 S.W.2d at 209). Once created, an easement by estoppel is binding upon the successors in title if reliance upon the easement continues. *Id.* Each case in which equitable estoppel is sought to be applied must rest upon its own facts. *Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987). "The gravity of a judicial means of acquiring an interest in land of another solely by parol requires that equitable estoppel be strictly applied, and the estoppel 'should be certain, precise and clear.'" *Martin v. Cockrell*, 335 S.W.3d 229, 237 (Tex. App.—Amarillo [Panel Op.] 2010, no pet.) (quoting *Allen v. Allen*, 280 S.W.3d 366, 381 (Tex. App.—Amarillo 2008, pet. denied)).

Three elements must exist to create an easement by estoppel: "(1) a representation of the easement communicated, either by words or action, to the promisee; (2) the communication was believed; and (3) the promisee detrimentally relied on the communication." *Id.* (citing *Storms*, 579 S.W.2d at 452). "These elements apply at the time the communication creating the alleged easement is made." *Id.* at 238 n.11 (citing *Vinson v. Brown*, 80 S.W.3d 221, 229 (Tex. App.—Austin 2002, no pet.)).

The Smiths assert that (1) the seller of the property made representations to them about access rights via Easement B, and (2) the Association, consistent with

17

those rights, built a gate soon after the sale and later built a fence along Easement B. By those actions, the Smiths reason, the Association acknowledged and ratified the representations of the seller. Moreover, the Smiths believed and relied on those representations by assuming the maintenance expenses for the easement.

By the terms of their own argument, the Smiths cannot prove this claim as a matter of law because the seller of the property in question was HCH, not the Association. Although the Smiths presented evidence that HCH made representations about access rights via Easement B, they presented no summary judgment evidence that the Association made any such representations at the time of HCH's communication to them regarding the easement. *See Martin*, 335 S.W.3d at 238 n.11. Any implied communications by the Association that *later* "acknowledged and ratified" HCH's earlier representations cannot serve as the basis for the creation of an easement by estoppel. *See id.* As they have framed it, the Smiths' argument is predicated on their belief and reliance on the *seller's* (HCH's) representations to them. The Smiths' summary judgment evidence regarding any communications by the Association, the owner of the land on which Easement B lies, concerns only later communications, such as the Association's involvement in the construction of the Smiths' gate and the fencing around Easement B.

We construe easements created by estoppel strictly and require that the estoppel be "certain, precise and clear." *Martin*, 335 S.W.3d at 237 (quoting *Allen*, 280 S.W.3d at 381). This inelasticity works against more liberal constructions of the required elements, a construction that the Smiths propose that we adopt in this instance. We decline to do so. Here, the Smiths failed to raise a genuine issue of material fact regarding an easement by estoppel.

After carefully examining the record before us, and for the reasons we have stated, we conclude that the trial court did not err when it granted the Association's

motion for summary judgment regarding the Smiths' various claims for easement rights over Easement B.  Accordingly, we overrule the Smiths' first issue.

B.  *The Alleged Irrevocable License*

In their second issue, the Smiths assert that the trial court erred when it granted the Association's motion for summary judgment, and denied their cross-motion, on their argument that they possess an irrevocable license to access Scenic Road and the Harbor Gate.

The deed from HCH to the Smiths for the property in dispute is subject to certain restrictive covenants, which includes a provision granting the Smiths the conditional right to use the amenities of the HCH homeowners' association.  The Smiths claim that they hold this irrevocable license to use HCH amenities and the right to travel on Scenic Road to access the HCH development and its amenities, including a marina, where the Smiths keep their boat.

We need not resolve the question of whether the Smiths hold the rights granted under this irrevocable license because the use of the Harbor Gate to access Scenic Drive is not the subject of the irrevocable license.  This is so because in a 2007 amendment to the covenant declarations, which is referred to in the restrictive covenants exhibit to the Smiths' deed, the HCH owners' association granted "to each Owner an irrevocable license to use and enjoy the equestrian center, gazebo, riding arena and spa/fitness center."

We must construe the amendment to HCH's declaration of covenants, conditions, and restrictions according to the general principles of contract construction.  *See Walton v. Midland Mira Vista Homeowners' Ass'n*, No. 11-12-00214-CV, 2014 WL 4662325, at *4 (Tex. App—Eastland Sept. 18, 2024, no pet.) (mem. op.) (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)).  In construing a contract, our primary objective is to ascertain and give effect to the true intentions of the parties as expressed in the contract.  *Id.* (citing *Italian Cowboy*

*Partners, Ltd v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)).  We examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that no provision will be rendered meaningless.  *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).  If the written agreement is so worded that it can only be assigned a certain or definite legal meaning, it is not ambiguous, and we will construe the agreement as a matter of law.  *Id.*

The record before us contains only the limited amendment that mentions the irrevocable license—the rest of the declaration is absent from the record.  The license says nothing about roads or specific means in which to access the amenities, and it expressly states and refers to the amenities to which owners shall have an irrevocable license: "the equestrian center, gazebo, riding arena, and spa/fitness center."  It makes no mention whatsoever of the use of any roads nor does it specify the manner of access to these amenities.

Although the parties' dispute on this point concerns the question of the Smiths' right to access and use the equestrian center, it is the use of Scenic Drive that is the primary focus of the parties' dispute.  The Smiths aptly summed up the issue in their motion for summary judgment, in which they charged that the Association refused to permit them "use and access to the equestrian center as required by the license; specifically, the ability to use the gate between the Harbor and the Ranch developments."  Consistent with this context, the Association indicated—both in an e-mail and in a filed pleading—its willingness not to contest the Smiths' assertion of their right to access and use the equestrian center.

The Smiths argue that the Association's e-mail indicating that it would not contest their right to access and use the equestrian center constitutes a binding Rule 11 agreement, which obligates the Association to permit the Smiths' full use and access to Scenic Drive through the Association's gate.  *See* TEX. R. CIV. P. 11.

20

The Smiths joined a claim for breach of this alleged agreement in their fourth supplemental petition.

The alleged Rule 11 agreement is not included in the appellate record, and there is no indication that it was either presented in open court or signed or filed with the trial court clerk. *See id.* (requiring Rule 11 agreements to be written, signed, and filed or else made in open court and entered of record). Further, although a portion of the Association's e-mail is included in several of the Smiths' pleadings and motions, these filings generally do not constitute competent summary judgment evidence, and we have not found this e-mail elsewhere in the record. *See Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 824 (Tex. 2022). However, even if we construed the language in the e-mail to be an alleged Rule 11 agreement, the portion of the Association's e-mail that is included in various pleadings and motions states:

> We are not contesting your clients' access to the equestrian center subject to the terms of the referenced license. Therefore, we do not intend to file a response to your MSJ on the subject. The only response we might file is that we are not contesting it, therefore, there's not a justiciable controversy.
>
> Please let me know if you are going to pull the hearing or if we should just say that we aren't contesting Mr. Smith's access to the equestrian center and we don't believe the issue remains in controversy.

As the Association argues, this statement, irrespective of its meaning, does not encompass the question of the use of Scenic Drive because the qualifier "subject to the terms of the referenced license" refers that question to an interpretation of the license and its terms.

The Smiths insist that their use and access to the equestrian center is inextricably intertwined with their access to Scenic Drive. But nothing in the Smiths' deed or in the HCH declarations and amendments (at least what is contained in the record before us) declares that owners shall have an irrevocable license to use

21

Scenic Drive in order to access any HCH amenities. And the Smiths did not present any competent summary judgment evidence that raised a genuine issue of material fact regarding whether the use of Scenic Drive is an amenity as defined in the license, or that access to Scenic Drive is necessary for the access and use of the amenities described in the license.

Moreover, the Association presented evidence that the Smiths can access all HCH amenities, including the equestrian center, without using Scenic Drive.[3] The equestrian center is adjacent to the Smiths' property, directly to the west and south. Flavious testified in his deposition that he is able to access the equestrian center directly from his home, either by vehicle or by foot. The gate to Scenic Drive is located south of the equestrian center. Flavious further testified that, to access HCH amenities without using Scenic Drive, he must "drive all the way around now. I can't use my golf cart anymore. I have to drive a regular vehicle to get on the road instead of being able to access my boat [through Scenic Drive]."

Because there is an absence of any summary judgment evidence that the irrevocable license applies to the use of Scenic Drive, paired with the undisputed evidence that other, public roads allow for access to all of the amenities identified by the Smiths' deed, we conclude that the Smiths failed to raise a genuine issue of material fact that, assuming they hold the rights as listed in the irrevocable license, those rights include the use of Scenic Drive. Therefore, the trial court did not err when it granted the Association's motion for summary judgment on this issue. Accordingly, we overrule the Smiths' second issue.

---

[3]The Association moved for summary judgment on this issue and argued that (1) the Smiths do not hold rights under the license, (2) the license does not concern access or use of Scenic Drive, and (3) no Rule 11 agreement was formed as a matter of law. The Association re-urges these arguments on appeal.

C. *The Smiths' Remaining Claims*

In their third issue, the Smiths assert that the trial court erred when it granted traditional and no-evidence[4] summary judgment for the Association on all claims, despite the existence of genuine issues of material fact as to each of the Smiths' remaining claims, which include trespass, tortious interference, and nuisance. Because our conclusion that the Smiths failed to raise a genuine question of material fact on any of their easement theories also disposes of their causes of action for trespass and tortious interference—which were predicated on the existence of such easement rights—we need not address them. *See* TEX. R. APP. P. 47.1. However, we must address their third issue as it relates to the trial court's grant of summary judgment on the Smiths' nuisance claim.

1. *Nuisance*

The Smiths' assert that they have sufficiently detailed the Association's actions and conduct that has substantially interfered with their use and enjoyment of their land, regarding Easement B as well as their property, namely, ongoing noise and the parking of foul-smelling and unsightly vehicles nearby. These matters, they argue, present a fact question on their nuisance claim for a jury to determine.

"The law of 'nuisance' seeks to balance a property owner's right to use his property 'as he chooses in any lawful way' against his duty not to use it in a way that 'injure[s] another.'" *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 590–91 (Tex. 2016) (quoting *Gulf, Colo. & Santa Fe Ry. Co. v. Oakes*, 58 S.W. 999, 1000 (Tex. 1900)). The Texas Supreme Court has noted that the "application of these principles gives rise to some of the most difficult questions and delicate distinctions known to the law." *Id.* at 591 (quoting *Oakes*, 58 S.W. at 1000).

---

[4]As we have said, although the Smiths state that the trial court granted summary judgment on no-evidence grounds, here, the trial court's order specifically granted the Association's "Motion for Summary Judgment on All of Plaintiff's Claims," which asserted only traditional grounds for summary judgment.

Nuisance is a type of legal injury, not a cause of action in and of itself. *See id.* at 591, 609. Whether a defendant is liable for creating a nuisance is generally a fact question for a jury to determine. *Id.*

The Texas Supreme Court has defined a private nuisance as: "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Id.* at 593. The minimum threshold for a nuisance is that it does not "concern itself with trifles, or seek to remedy all of the petty annoyances and disturbances of every day life in a civilized community even from conduct committed with knowledge that annoyance and inconvenience will result." *Id.* at 595 (quoting William L. Proser, LAW OF TORTS § 88, at 626 (3d ed. 1964)).

As the Smiths point out, the Association's arguments here focus on whether the degree of interference was substantial enough and whether the discomfort or annoyance it caused was unreasonable enough to rise to the level of a private nuisance. The Smiths presented summary judgment evidence that the Association, on numerous occasions, parked vehicles and equipment adjacent to their property. In its motion for summary judgment, the Association argued that this temporary action was necessary to address topographical and leveling issues in the area of the equestrian center where this equipment is customarily kept. Notably, the Association does not re-urge its arguments on appeal, nor does it cite to any authority to support its arguments. Rather, it only asserts that (1) the Smiths offer only speculation, not evidence, (2) Flavious admitted in his deposition that the Smiths were not interfered with, and (3) because the Smiths purchased property surrounded by development property, it is presumed that the property will continue to develop, with accompanying increases in noise and people in the area.

In most instances, such as in this case, the parties' competing evidence and arguments would be enough to raise a fact issue as to whether the Association's

24

temporary action constitutes a private nuisance. *See id.* at 593. We disagree that the Smiths have not presented competent summary judgment evidence on this point to counter the Association's arguments. Moreover, the referenced deposition testimony by Flavious pertains to the use of Easement B by Ranch employees, not to whether vehicles and equipment from the equestrian center were parked adjacent to the Smiths' property as they claim.

We reiterate the supreme court's pronouncement in *Crosstex* that "[w]hether an interference is substantial or merely a 'trifle' or 'petty annoyance' necessarily depends on the particular facts at issue, including, for example, the nature and extent of the interference, and how long the interference lasts or how often it recurs." *Crosstex N. Tex. Pipeline*, 505 S.W.3d at 595–96 (footnote omitted). We conclude that fact questions concerning these points remain. Consequently, we sustain the Smiths' third issue as to their nuisance claim.

## IV. *This Court's Ruling*

We affirm in part, and we reverse and remand in part. We affirm the trial court's grant of summary judgment in favor of the Association as to all claims raised by the Smiths except for the Smiths' nuisance claim. On that claim, we reverse and remand it to the trial court for further proceedings consistent with this opinion.

W. STACY TROTTER
JUSTICE

January 9, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.